IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

## DONALD JAMES ROBINSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2021-CR-1213          Robert Bateman, Judge**

_____

**No. M2024-00860-CCA-R3-PC**

_____

The petitioner, Donald James Robinson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Gordon W. Rahn, Clarksville, Tennessee, for the appellant, Donald James Robinson.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; and Robert J. Nash, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On February 8, 2023, the petitioner pled guilty in Montgomery County to two counts of attempted first-degree murder, one count of employing a firearm during the commission of a dangerous felony, one count of possession of a firearm after having been previously convicted of a felony drug offense, one count of aggravated assault, and one count of evading arrest with risk of death, for which he received an effective sentence of thirty-five years in confinement.[1] The petitioner later filed a timely pro se petition for post-conviction relief, arguing, in part, trial counsel was ineffective for failing to obtain a mandatory joinder

_____

[1] The transcript of the guilty plea hearing is not included in the record.

of his cases in Montgomery and Stewart County. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, arguing he "would not have entered a guilty plea in this matter had he been made fully aware of his options available to him." An evidentiary hearing was held on May 8, 2024, during which the petitioner and trial counsel testified.

The petitioner testified that trial counsel did not contact him until several months after her appointment. The petitioner knew that he would also likely face charges in Stewart County because his actions in this case spanned both Montgomery and Stewart Counties. Therefore, he wrote trial counsel and asked whether his charges in Montgomery and Stewart County were subject to mandatory joinder since they were part of the same episode. Trial counsel sent the petitioner a letter on February 3, 2022, stating that the petitioner's "Stewart and Montgomery County cases [could] be handled together at once." The petitioner understood this to mean that his cases in both counties would be "resolve[d] all at once." When the petitioner asked trial counsel for clarification, she instead focused on persuading the petitioner to accept a plea agreement. Trial counsel told the petitioner that "if [he] didn't take the 35-year time, [he] was going to get 60-plus years," which the petitioner perceived as a threat. Therefore, the petitioner testified that he "ended up taking [the plea agreement] out of fear of more time." When the petitioner entered the guilty plea, he assumed the Stewart County charges were included in the agreement; however, a few months after his guilty plea was entered, he was indicted in Stewart County "on the same criminal offense." He later pled guilty to the charges in Stewart County and received a twenty-four-year sentence which is being served concurrently with the sentence in the present case. According to the petitioner, if he had known the Stewart County charges were not part of the plea agreement, he would have gone to trial despite the possibility of receiving sixty years in prison because "it would have been [his] peers that [were] looking at [him], not just the judicial system."

On cross-examination, the petitioner agreed that trial counsel's letter did not use the words "mandatory joinder" or discuss the rules associated with joinder, but he insisted that his initial letters to trial counsel used the term "mandatory joinder." The petitioner could not recall whether the trial court announced at the guilty plea hearing that his plea encompassed the Stewart County charges, and he did not ask the trial court for clarification during the guilty plea hearing. At the guilty plea hearing, trial counsel "didn't say one way or the other," so the petitioner had "no reason to disbelieve" that his agreement included the Stewart County charges. Although the petitioner agreed that he accepted the plea offer because he was afraid of receiving more time, he now believed a jury would convict him of a lesser-included offense.

Trial counsel testified that she was appointed to represent the petitioner in October 2021. She met with the petitioner four or five times at the jail, participated in video visits

due to COVID protocols, and wrote seventeen letters, mostly in response to letters from the petitioner. At the time of her representation, trial counsel was aware of the petitioner's potential charges in Stewart County as well as additional charges in Kentucky. Trial counsel did not recall ever using the term "mandatory joinder" with the petitioner and testified that it would have been inappropriate in this case because the charges were in "different counties and different jurisdictions." Trial counsel could not recall whether the petitioner used the word "joinder" in any of his letters but stated that the petitioner asked trial counsel if she could help him handle his cases in Stewart County and Kentucky, and trial counsel's February 2022 letter to the petitioner was in response to the petitioner's request. Although trial counsel did not ultimately represent the petitioner in Stewart County, she did assist the petitioner in getting his Kentucky charges dismissed.

Trial counsel denied threatening the petitioner when explaining the State's plea offer, stating that she simply told the petitioner what the Montgomery County prosecutor said and explained the petitioner's potential exposure if he proceeded to trial. Trial counsel testified that the victims in this case were police officers who were "very adamant about prosecution." The officers believed the petitioner "almost murdered them," and therefore, the prosecutor "felt that it was important to prosecute [the petitioner] to the fullest extent he could." Trial counsel stated that she fully explained to the petitioner the evidence against him and the nature of the offenses prior to the petitioner accepting the plea offer. During the guilty plea hearing, the petitioner did not hesitate and appeared to enter the plea knowingly, intelligently, and voluntarily. If the petitioner had requested to proceed to trial, trial counsel "would definitely have been prepared for a trial."

On cross-examination, trial counsel stated that she could not recall the petitioner ever asking her about the joinder rule or using the word "joinder." However, she stated that, if he had, she would not have told him that they would join the cases from Montgomery and Stewart County because "that would not be appropriate." When asked to clarify her statement in the February 2022 letter that the "Montgomery and Stewart County cases [could] be handled together at once," trial counsel testified that the petitioner was under the impression that he had pending charges in Stewart County. Trial counsel told the petitioner that he had not been indicted in Stewart County, but that if he was, she would handle those charges for him as well. Trial counsel testified that she "definitely" told the petitioner that the plea offer did not include the potential Stewart County charges during their discussions prior to the guilty plea hearing.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

- 3 -

*Analysis*

On appeal, the petitioner argues trial counsel was ineffective for advising the petitioner that his guilty plea would include his Stewart County charges. The State contends the post-conviction court properly denied the petition. Following our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

- 4 -

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 S.W.3d at 257.

At the evidentiary hearing, the petitioner testified that he wrote trial counsel a letter asking whether mandatory joinder applied to his Montgomery and Stewart County cases. Trial counsel replied that the cases could be "handled together at once," so the petitioner believed his Montgomery and Stewart County charges would be combined into one case. The petitioner eventually accepted a thirty-five-year plea agreement "out of fear of more time." He was later indicted in Stewart County and accepted a twenty-four-year plea offer to be served concurrently with his sentence in Montgomery County. According to the petitioner, if he had known the Stewart County charges were not part of his original plea agreement, he would have gone to trial, despite the potential exposure of sixty years, because he believed the jury would convict him of a lesser-included offense. Trial counsel, however, testified that she received a letter from the petitioner asking her to represent him in additional cases in Stewart County and Kentucky. Trial counsel told the petitioner, who had not yet been indicted in Stewart County, that she would help him resolve all of his charges. Regarding the Montgomery County charges, trial counsel advised the petitioner to accept the State's thirty-five-year plea offer. According to trial counsel, the victims, who believed the petitioner had tried to murder them, were adamant about prosecuting the

petitioner to the fullest, and the petitioner was potentially facing a sixty-year sentence if he proceeded to trial. Trial counsel testified that she never used the term "mandatory joinder" with the petitioner and did not believe the petitioner used the term either. Trial counsel also stated that joinder was not appropriate in this case and "definitely" told the petitioner that the plea agreement did not include the potential Stewart County charges.

In denying relief, the post-conviction court found that "no transcript of the plea hearing was entered as an exhibit at the post-conviction hearing to establish whether the Stewart County charges were even mentioned when the plea was entered" and that "the charges in Stewart County were not even pending when this case was resolved." The post-conviction court also noted that "[n]o proof was presented as to what allegations would support mandatory joinder of the events occurring in Montgomery County and Stewart County." We agree. Trial counsel testified that she never told the petitioner that his Montgomery and Stewart County cases would be joined because "that would not be appropriate." Additionally, trial counsel "definitely" told the petitioner that his plea agreement did not include the potential Stewart County charges. The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against its findings. *See Tidwell*, 922 S.W.2d at 500. Furthermore, although the petitioner stated that he would not have pled guilty if he had known the plea offer did not include his Stewart County charges, he also testified that he "ended up taking [the plea agreement] out of fear of more time." Accordingly, the petitioner is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.


s/ J. ROSS DYER
J. ROSS DYER, JUDGE